UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HORSEHEAD CORPORATION v.                    7:09-CV-483
MICHAEL SHINSKI                                 (TJM/ATB)

_____

ALAN R PETERMAN, ESQ., for Plaintiff
NEIL J. SMITH, ESQ., for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER

Presently before this court is a motion by defendant Michael Shinski to file a

third-party complaint against Pacific Employer's Insurance Corporation ("PEIC")

pursuant to FED. R. CIV. P. 14. (Dkt. No. 12, 15).  Plaintiff Horsehead Corp. has

opposed the motion. (Dkt. Nos. 14, 18).

## DISCUSSION

1.    **Background and Facts**

    A.    **Original Complaint**

Defendant, Michael Shinski was injured while working in a mine operated by

the Zinc Company of America. ("ZCA").  Defendant was employed by a contractor

performing work in the mine. (Compl. ¶ 8).  In 2000, Shinski brought a personal

injury action against ZCA in New York State Supreme Court, St. Lawrence County.

(Compl. ¶ 9).  A copy of Shinski's Amended Complaint in New York Supreme Court

is attached as Exhibit A to defendant's proposed Third Party Complaint.[1] (Dkt. No.

_____

[1] The defendant's state court complaint also appears as Exhibit A to plaintiff Horsehead
Corporation's complaint in this action. (Dkt. No. 1 - Ex. A).

12-2).  At the time that Shinski brought his action in state court, ZCA was a subsidiary "or division" of Horsehead Industries, Inc. (Compl. ¶ 10).

In 2002, ZCA filed for bankruptcy in the Southern District of New York. (Compl. ¶ 11). The bankruptcy resulted in a stay of defendant Shinski's personal injury action in state court.  In April of 2003, defendant Shinski filed a motion in the bankruptcy action, seeking relief from the stay of his personal injury case so that he could pursue his personal injury action in state court.  According to the original complaint in this action, defendant Shinski told the bankruptcy court that he intended to collect his judgment solely through the proceeds of any insurance policy issued to ZCA, and that defendant Shinski waived any personal liability of the debtor ZCA. (Compl. ¶¶ 11-13).

In November of 2003, Horsehead Corporation (plaintiff in this action) entered into an Asset Purchase Agreement ("APA") with ZCA, by which ZCA would sell designated assets to Horsehead Corporation. (Compl. ¶ 14).  The APA stated that Horsehead Corporation would only assume the liabilities listed in the APA.  The listed liabilities did not include any liability of ZCA to Mr. Shinski arising out of the state court litigation. (Compl. ¶¶ 14-15).  The sale to Horsehead Corp. was authorized by the bankruptcy court on December 12, 2003. *Id.*

On February 24, 2005, in accordance with the APA, Horsehead Corp. entered into a stipulation whereby ZCA assigned certain insurance contracts to Horsehead Corp.  One of those contracts was a general liability policy issued by PEIC that insured ZCA against defendant Shinski's state court personal injury claim. (Compl.

2

¶ 16).  According to plaintiff's statement of facts, under the PEIC insurance policy, ZCA was "self-insured" for the first $250,000.00 of any amount that was awarded to a tort plaintiff.  This is referred to as the "Self-Insured Retention," or "SIR." (Compl. ¶ 17).  PEIC was required only to indemnify ZCA under the policy for losses in excess of the SIR, up to the maximum limits available on the policy. *Id.*

On January 29, 2008, defendant Shinski filed a second motion for relief from the stay in the Southern District bankruptcy court.  On February 5, 2008, defendant Shinski and ZCA entered into a stipulation providing that the stay would be lifted so that defendant Shinski could proceed with his state court action, but he agreed that any recovery would be limited to the "proceeds available under the policy." (Compl. ¶¶ 18-21 & Ex. D).  Mr. Shinski also agreed that no judgment would be enforced, except to the extent of the insurance policy, against the assets of ZCA and a variety of other present or former entities, including ZCA's "assigns." *Id.*

On January 5, 2009, Horsehead Corp.'s attorney attempted to clarify the meaning of this agreement with defendant Shinski's attorney.  Horsehead Corp.'s interpretation of the agreement is that Mr. Shinski has waived the first $250,000.00 of any award that he might receive in the state court action, based on the proposition that to attempt to collect the amount of the SIR would be to enforce the judgment against ZCA itself.  Defendant Shinski has a different interpretation of the agreement, based on his claim that PEIC was required to provide "drop down" coverage for the SIR amount.  On April 24, 2009, Horsehead Corp. filed this diversity action for a declaratory judgment seeking a declaration that Mr. Shinski has waived any claim to

the payment of the first $250,000.00 of any recovery in the state court action.

> **B.     Third-Party Complaint**

Shinski has moved to implead PEIC and has filed a proposed third-party complaint. (Dkt. No. 12-2).  In addition to the facts alleged by Horsehead Corp. in its complaint, defendant/third-party plaintiff Shinski alleges that he made a successful motion for summary judgment on the issue of liability in state court. (Third Party Complaint ("TP Compl.")  ¶ 9).  The proposed third party complaint adds some factual allegations regarding Horsehead Industries, ZCA, and the bankruptcy case. (TP Compl. ¶¶ 10-15).  In that discussion, Shinski alleges that, after the sale of assets to Horsehead Corp., Horsehead Industries changed its name to HH Liquidating Corp. for the purpose of administering the proceeds that were received from Horsehead Corp. and then began operating the facilities it had purchased. (TP Compl. ¶ 13).

Shinski claims that a dispute arose between Horsehead Corp., HH Liquidating Corp., and PEIC, but that the dispute was resolved through a January 2005 stipulation providing that Horsehead Corp. would assume all of the obligations of  Horsehead Industries and its subsidiaries under the insurance policies, "regardless of when the obligations may have arisen." (TP Compl. ¶ 14).  The third-party complaint asks for a declaration that PEIC is required to provide coverage for the full amount of any judgment or portion thereof awarded to Mr. Shinski against ZCA, notwithstanding the SIR or any deductible. (TP Compl. ¶ 18).  Mr. Shinski claims that PEIC originally provided "excess coverage" to ZCA and Horsehead Industries for Mr. Shinski's claims.  He further contends that, upon the insolvency of ZCA and Horsehead

4

Industries, PEIC is required by applicable insurance law to provide coverage for any claim or portions of claim that fall within the SIR of the policy issued to ZCA and Horsehead Industries. (TP Compl. ¶ 19-20).

## II.   Impleader

### A.   General Standards

Rule 14 of the Federal Rules of Civil Procedure provides that a defending party may serve a summons and complaint on a non-party who "is or may be liable to it for all or part of the claim against it." FED. R. CIV. P. 14(a)(1).  A third party claim may be asserted when the third party's liability is somehow dependent on the outcome of the main action or when the third party is secondarily liable to the defendant. *Falcone v. MarineMax, Inc.*, 659 F. Supp. 2d 394, 401-02 (E.D.N.Y. 2009); *Prudential Ins. Co. v. BMC Industries, Inc.*, 113 F.R.D. 100, 102 (S.D.N.Y. 1986).  Timely motions to implead should be freely granted to promote judicial efficiency unless doing so would prejudice the plaintiff, would unduly complicate the trial, or would foster an obviously unmeritorious claim. *Id.* (citations omitted).

Impleader is not permissible, however, simply because the third party claim arises out of the "same nucleus of facts as the main claim." *Prudential Ins. Co.*, 113 F.R.D. at 102.  The liability of the third party must not arise out of a "separate and independent claim." *Internat'l Paving Sys. v. Van-Tulco, Inc.*, 866 F. Supp. 682, 687 (E.D.N.Y. 1994) (citations omitted).  By the same token, it is not necessary that the legal claims be identical in order to allow impleader. *Affiliated FM Ins. Co. v. Jou Jou Designs*, 90 Civ. 8262, 1993 U.S. Dist. LEXIS 14547, *6 (S.D.N.Y. Oct, 15, 1993).

The purpose of Rule 14 is to avoid two separate actions which should be tried together; to save the time and cost of duplicating evidence; to obtain consistent results; and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against a third-party. *Id.* at *5-6 (S.D.N.Y. Oct, 15, 1993) (quoting *Dery v. Wyer*, 265 F.2d 804, 806-07 (2d Cir. 1959)). In the appropriate factual circumstances, it has been held that impleader is available in declaratory judgment actions. *Id.* at *6-7.

The purpose of Rule 14 should not be defeated by a "technical interpretation" of its requirements. *Id.* at *6. The district court, in its discretion, must balance the benefits of impleading and the prejudice that the impleaded party might suffer. *Id.* at *7-8 (citing *American Fidelity & Casualty Co. v. Greyhound Corp.*, 232 F.2d 89 (5th Cir. 1956)). Factors relevant to this determination are whether the moving party deliberately delayed in making the motion; whether granting the impleader will unduly complicate the trial; whether impleading will prejudice either the plaintiff or the third party defendant; and whether the proposed third-party complaint states a claim for which relief can be granted. *Falcone*, 659 F. Supp. 2d at 402 (citing *Capital Records Inc. v. City Hall Records, Inc.*, No. 07-CV-6488, 2008 U.S. Dist. LEXIS 55300, 2008 WL 2811481, *3 (S.D.N.Y. July 18, 2008)). Prejudice to the third-party defendant is measured by determining whether that defendant will incur more expense or be at a greater disadvantage in defending a third-party suit or a separate action against it. *Affiliated FM Ins. Co. v. Jou Jou Designs*, 90 Civ. 8262, 1993 U.S. Dist. LEXIS 14547 at *8 (citing *inter alia Old Republic Ins. Co. v. Concast, Inc.*, 99 F.R.D.

6

566, 569-70 (S.D.N.Y. 1983)).

### B.    Application

In its complaint, Horsehead Corp. has asked the court to declare that defendant Shinski waived any claim against the assets of ZCA and/or its assigns, including Horsehead Corp. (Compl. ¶ 28).  Horsehead Corporation also seeks a declaration that "[t]he proceeds of the Policy do not include the first $250,000.00 which constitute an obligation of ZCA, and not an obligation of Horsehead Corporation." (Compl. ¶ 29). Horsehead further asks the court to declare that defendant Shinksi has "no legal right" to recover funds from any of four sources, one of which includes the PEIC policy, "except to the extent that any award is in excess of $250,000.00." (Compl. ¶ 31). Finally, the complaint asks the court to declare that defendant Shinski may not recover the first $250,000.00 awarded in the state court action. (Compl. ¶ 32).

The proposed third-party complaint alleges that "[u]pon the insolvency of ZCA and Horsehead Industries, PEIC is required by applicable insurance law to provide coverage for claims and portions of claims that fall within any deductible or SIR portion of its policies issued to ZCA and Horsehead Industries. (TP Compl. ¶ 20). The proposed third-party complaint only appears to allege that the "applicable insurance law" provides for drop-down coverage in this situation.  However, Mr. Shinski's memorandum of law states that a determination of PEIC's liability with respect to the first $250,000 of any judgment also requires interpretation of the PEIC policy.

This court finds that, notwithstanding that Horsehead Corp. brought a claim for

declaratory judgment, the issues presented in the proposed third-party complaint should be decided together with the main action.  Because the plaintiff's complaint seeks a declaratory judgment with respect to the liability of PEIC under its policy, adding PEIC as a party is consistent with the purposes of Rule 14.  The third party insurer's liability for coverage under the policy depends upon whether the defendant "waived" his rights, and this may depend upon the language of the SIR.  There is no indication that plaintiff will be prejudiced by the impleader.

In *Admiral Insurance Co. v. Grace Industries, Inc.*, the bankruptcy court in the Eastern District of New York, and the District Court on appeal from the bankruptcy order, stated that New York Insurance Law does not require an excess insurer to cover the SIR upon the insolvency of the insured.  *Admiral Ins. Co. v. Grace Indus., Inc.*, 409 B.R. 275, 279-82 (E.D.N.Y. 2009), *affirming as modified*, *In re Grace Indus.*, 341 B.R. 399 (E.D.N.Y. 2006).  However, the language of the SIR is relevant to the analysis of whether the insurer may have liability for the SIR amount.  *See Id.* at 277-78.  If the policy language does not provide for the drop-down coverage, then the insurer is not required to cover the SIR.  *Id.* at 279-282.  The court stated that pursuant to New York Insurance Law § 3420, the failure of a bankrupt to fund the SIR does not relieve the insurer of the obligation to pay claims *under the policy*, however, this section of the law does not require the insurer to cover more than it would have *under the policy*. *Id.* at 280-81.

In this case, the proposed third-party complaint only mentions New York insurance law; however, the defendant's memorandum also raises the interpretation of

the policy and the SIR. (Def. Mem. of Law, Dkt. No. 15,  at 5).  This court has not seen the policy and the parties have not attached or quoted the actual language of the SIR.  Based on the information before it, the court finds that (1) proposed third-party complaint may state a claim for which relief can be granted; (2) the addition of the claims in the third-party complaint are related to the plaintiff's claim that defendant "waived" his rights to the first $250.000.00 of any recovery; (3) the case will not be more complicated since the issues will remain the same regardless of the addition of PEIC as a third-party defendant; and (4) plaintiff will not be prejudiced if PEIC is impleaded.  Thus, the court finds that, if the case is to continue as it currently stands, impleader should be allowed.

## IV.  **Additional Issues**

Notwithstanding the above ruling, the court must make some observations about this case.  It is unclear why the original complaint was filed in District Court in the Northern District of New York at all.  The documents filed as exhibits in this case, upon which plaintiff relies in claiming that defendant has waived his rights to the amount of the SIR, reflect a stipulation signed in bankruptcy court in the Southern District of New York.  That stipulation specifically states that "[t]he Bankruptcy Court shall retain jurisdiction to interpret, enforce and resolve any disputes arising under or related to this Stipulation." (Compl. Ex. D at ¶ 8) (Dkt. No. 1).

Since the Bankruptcy Court Stipulation and Order specifically refers to the agreement made by defendant Shinski not to "enforce any judgment in the Action arising from the Claim . . . against the assets of the Debtors and their present or future

. . . assigns . . . except to the extent of proceeds available under the Insurance Policy," it would appear that any dispute arising over exactly what was waived by defendant would be appropriately resolved in the Bankruptcy Court in the Southern District of New York.  This court makes no such ruling, but merely finds that, if the plaintiff's action is appropriate in this district, then the defendant's attempt to obtain an interpretation of the insurance policy is also appropriate in this district and should be decided within this action.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that defendant Shinski's motion to implead (Dkt. No. 12) is **GRANTED**, and defendant is ordered to file its third-party complaint by **Monday, May 17 , 2010.**

Dated: April 30, 2010

Hon. Andrew T. Baxter
U.S. Magistrate Judge